1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    AMANDA CUNNINGHAM, individually          No. 2:23-cv-02564-DJC-CSK
      and on behalf of other members of
12    the general public similarly situated,

13                    Plaintiff,                ORDER DENYING REMAND MOTION

14            v.

15

16    SHARECARE CL, LLC, a Delaware
      limited liability company; SHARECARE
17    HEALTH DATA SERVICES, LLC, a
      Delaware limited liability company;
18    SHARECARE OPERATING COMPANY,
      INC., a Delaware corporation;
19    CARELINX INC., a Delaware
      corporation; and DOES 1 through
20    100, inclusive,

21                    Defendants.

22

23

24            Plaintiff Amanda Cunningham brings a Class Action Complaint against

25    Defendants Sharecare CL, LLC; Sharecare Health Services, LLC; Sharecare Operating

26    Company, Inc.; Carelinx Inc.; and 100 Doe Defendants, alleging that they violated

27    provisions of the California Labor Code and California's Unfair Competition Law as a

28    result.  Following removal, Plaintiff sought remand, which Defendants oppose.  For

                                            1

1  the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand Pursuant

2  to 28 U.S.C. § 1447.  (ECF No. 19.)  Defendants have fourteen (14) days from the

3  docketing of this Order to file and serve any Answers or next responsive pleadings.

**BACKGROUND**

4

5  **I.  Factual Background**

6       Plaintiff Amanda Cunningham is a California resident.  (*See* Compl. (ECF No. 1)

7  ¶ 5.)  Defendants were each an employer of Plaintiff within the meaning of all

8  applicable California laws and statutes according to Plaintiff.  (*See id*. ¶ 7.)  Defendants

9  employed Plaintiff and other persons as hourly-paid or non-exempt employees within

10 the State of California.  (*Id*. ¶ 17.)  Defendants, jointly and severally, employed Plaintiff

11 as an hourly-paid non-exempt employee during the relevant time period.  (*Id*. ¶ 18.)

12 Plaintiff generally alleges that Defendants failed to provide meal and rest breaks as

13 required, failed to pay minimum wage and various premiums, failed to provide timely

14 wages upon discharge, and failed to provide accurate wage statements.

15 **II.  Procedural Background**

16      Plaintiff filed the Complaint in Yolo County Superior Court.  (*See* Compl. at 26.)

17 Defendants removed the matter to federal court based on jurisdiction under the Class

18 Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d).  (*See* Removal Not. (ECF

19 No. 1) at 2.)  Plaintiff then brought the instant Motion seeking remand (*See* Mot. (ECF

20 No. 19), which is fully briefed.  (*See* Opp'n (ECF No. 22); Reply (ECF No. 23); Defs.'

21 Suppl. Br. (ECF No. 27); Pl.'s Suppl. Br. (ECF No. 28).)  The motion was submitted

22 without oral argument following receipt of supplemental briefing.  (See ECF No. 26.)

**DISCUSSION**

23

24 **III.  Legal Standard**

25      "[A]ny civil action brought in a State court of which the district courts of the

26 United States have original jurisdiction, may be removed by the defendant, or the

27 defendants, to the district court of the United States for the district . . . where such

28 action is pending."  28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original

1  jurisdiction over class actions in which the parties are minimally diverse, the proposed

2  class has at least one hundred members, and the aggregated amount in controversy

3  exceeds $5 million dollars. *See* 28 U.S.C. § 1332(d)(2), (d)(5).

4      A defendant removing a class action filed in state court pursuant to CAFA need

5  only plausibly allege in the notice of removal that the CAFA prerequisites are satisfied.

6  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).  If the

7  plaintiff seeks to remand that action back to state court, however, the defendant bears

8  the evidentiary burden of establishing federal jurisdiction under CAFA by a

9  preponderance of the evidence.  *See id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *also*

10 *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).  "If at any

11 time before final judgment it appears that the district court lacks subject matter

12 jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); *see also Smith v. Mylan*

13 *Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d

14 1251, 1257 (9th Cir. 1997).  The Supreme Court has advised, however, "that no

15 antiremoval presumption attends cases invoking CAFA" in part because the statute

16 was enacted "to facilitate adjudication of certain class actions in federal court," and

17 that "CAFA's provisions should be read broadly, with a strong preference that

18 interstate class actions should be heard in a federal court if properly removed by any

19 defendant."  *Dart Cherokee*, 574 U.S. at 89 (citations and quotations marks omitted);

20 *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

21     Where a plaintiff's complaint does not quantify damages, as here, defendants

22 must show by a preponderance of the evidence that the amount in controversy

23 exceeds the jurisdictional threshold.  *See Canela v. Costco Wholesale Corp.*, 971 F.3d

24 845, 849 (9th Cir. 2020).  A defendant "is only required to show that it is more likely

25 than not that [the plaintiff's] maximum recovery reasonably could be over $5 million."

26 *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020).  This burden is not

27 daunting as "a removing defendant is not obligated to 'research, state, and prove the

28 plaintiff's claims for damages.'"  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d

3

1199, 1204–05 (E.D. Cal. 2008) (citation omitted).  Rather, in making this showing, a removing defendant "must be able to rely 'on a chain of reasoning that includes assumptions . . . .'"  *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)); *see also id.* ("[A] CAFA defendant's amount in controversy assumptions in support of removal will always be just that: assumptions.").  These assumptions must reflect more than "mere speculation and conjecture," *Ibarra*, 775 F.3d at 1197, and they "need some reasonable ground underlying them," *id.* at 1199, but they "need not be proven," *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).  Assumptions may be reasonable if they are "founded on the allegations of the complaint."  *Arias*, 936 F.3d at 925.  Parties may also submit evidence outside the complaint, including affidavits, declarations, or other summary-judgment type evidence.  *See Ibarra*, 775 F.3d at 1197.

The plaintiff can contest the amount-in-controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations.  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020).  "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction."  *Id.* (citations and quotation marks omitted).  A factual attack, on the other hand, contests the truth of the allegations themselves.  *See id.*  When a plaintiff mounts a factual attack, they "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."  *Id.* at 700.

## IV.   Analysis

### A.   Plaintiff Brings a Factual Challenge

Here, Plaintiff challenged the truth of Defendants' allegations in the Removal Notice.  (*See, e.g.*, Mot. at 1, 6–8.  *See also* Pl.'s Suppl. Br. at 2 ("But without any evidence, [Defendants] give no help in establishing what the *plausible* violation rates would be under the specific circumstances.").  *But see id.* ("Moreover, Defendants still

4

1  failed to allege any specific violation rate as applying to the facts of this case.").)  As a

2  result, when a plaintiff amounts a factual attack, as here, the burden is on the

3  defendant to establish by "competent proof" and a preponderance of the evidence

4  under the same standard as at summary judgment that the amount in controversy

5  exceeds the $5 million jurisdictional threshold.  *See Harris*, 980 F.3d at 700–01.

6  **B.      Defendants' Evidence Reasonably Establishes the Minimum $5**
        **Million Amount in Controversy**
7

8          The only disputed issue is the amount in controversy.  (*See* Opp'n at 4.)  Plaintiff

9  argues that "Defendants' amount in controversy figures depends entirely on zero

10  evidence and unsupported assumptions." (Mot. at 9.)  Because Plaintiff brings a

11  factual attack, Plaintiff's argument fails because Defendants' submitted materials

12  establish enough facts that could be admitted at trial that suggest by a

13  preponderance of the evidence that the amount in controversy exceeds $5 million.[1]

14  **1.      Defendants' Estimated Class Sizes Are Reasonable**

15          Defendants assert that there were over 100 class members and conclude that,

16  based on the "policy and practice" language contained in eight of the causes of

17  action, "[t]here is no question that Plaintiff and the putative class seek more than" $5

18  million.  (Removal Not. ¶ 25.)  Plaintiff objects that Defendants did not provide an

19  exact number of class members.  (*See* Mot. at 7.)  In response to the Court's Order for

20  supplemental briefing (ECF No. 26), Defendants have provided a breakdown of how

21  many hourly full-time equivalent employees in California they had on average.  (*See*

22  Opp'n at 10–13.)  Plaintiff objects to these estimates because they include timeframes

23

24  [1] Plaintiff's evidentiary objections are overruled as it relates to how many employees Defendants had
   during the relevant time period and the lowest minimum wage during that period because Defendants
25  submitted a declaration from a "Senior Manager" who had "access to and familiarity with the personnel
   records of Defendants . . . ." (Carlson Decl. (ECF No. 22-1) ¶¶ 1–2.)  To the extent the Senior Manager
26  does not have personal knowledge, such information *could* be admitted at trial by other witnesses
   and/or documents.  *See* Fed. R. Civ. P. 56(c)(2); *e.g.*, *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th
27  Cir. 2003) (considering hearsay in a diary).  Similarly, Plaintiff's objections to the Court considering
   arguments and evidence that were not provided in the Removal Notice (Reply at 2–3) are overruled, as
28  during a factual attack the Court is not limited to the pleadings.  *See, e.g.*, *Harris*, 980 F.3d at 699.

1    beyond the statute of limitation.  (*See* Reply at 6–7.)  But this "confuses the amount in

2    controversy with the amount that will ultimately be recovered."  *Jauregui*, 28 F.4th at

3    994 n.6.  "[T]he strength of any defenses indicates the *likelihood* of the plaintiff

4    prevailing; it is irrelevant to determining the amount that is at stake in the litigation."

5    *Id.* (quoting *Arias*, 936 F.3d at 928).

6         Plaintiff also notes that Defendants extend the calculation from November 6,

7    2023, the date of removal, to December 20, 2023, the date of the calculations.  (*See*

8    Reply at 7.)  As Plaintiff argues, the evidence must be "'relevant to the amount in

9    controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State*

10   *Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  Nevertheless, there is no

11   reason for the Court *not* to assume that there were not the same number of

12   employees on average by the end of October, as there is no reason to believe that the

13   actual counts from November and December would affect the yearly average.

14   Therefore, the Court concludes that Defendants have established a reasonable class

15   size for each year and each cause of action by competent proof.  *See Enomoto v.*

16   *Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at *2 (9th Cir. Dec. 27, 2023)

17   (mem.) (non-precedential) ("A defendant is permitted to rely on a declaration from an

18   individual who has reviewed relevant employee payroll and wage data to support its

19   amount in controversy allegations." (citations omitted)).

20         **2.     The Alternative Violation Rate Assumptions Are Reasonable**

21        Next, Plaintiff challenge Defendants' 100% violation rate for all of the causes of

22   action used in their calculations as unreasonable based on the limiting language in

23   the Complaint stating that Defendant violated the California Labor Code due to their

24   pattern and practices, "but not all" the time.  (*See* Mot. at 8 (citing Compl. ¶¶ 56–61,

25   68–70); Reply at 3–6.)  However, Defendants posit alternative calculations based on a

26   "minimum violation rate" in their Opposition and Supplemental Brief.  (*See* Opp'n at

27   13; Defs.' Suppl. Br. at 3.)  *See also Jauregui*, 28 F.4th at 996 (noting that "the district

28   court should consider the claim under the better assumption – not just zero-out the

1    claim.").  Plaintiff objects to these assumptions because "Defendants still failed to

2    allege any specific violation rate as applying to the facts of this case."  (Pl.'s Suppl. Br.

3    at 2.)  But an "assumption may be reasonable if it is founded on the allegations of the

4    complaint."  *Arias*, 936 F.3d at 925 (citing *Ibarra*, 775 F.3d at 1198–99).

5           Here, Defendants determined that a violation rate of 37% to 42% for the

6    second, third, fifth, and sixth causes of action, which bring meal, rest break, waiting

7    time penalties, and non-compliant wage statement claims, respectively, would

8    establish the amount in controversy.  (*See* Opp'n at 10–13; Defs.' Suppl. Br. at 2–3.)  As

9    Defendants note, other courts, including this Court, have held that violation rates of

10   even 60% for some of these claims could be reasonable.  (*See* Opp'n at 13 (citing

11   *Demaria v. Big Lots Stores – PNS, LLC*, No. 2:23-CV-00296-DJC-CKD, 2023 WL

12   6390151, at *5–8 (E.D. Cal. Sept. 29, 2023), where the complaint alleged a "policy and

13   practice" violation that occurred "at times"); Defs.' Suppl. Br. at 2 (same).)  Defendants

14   suggest that the Court should use the smaller 37.8% violation rate,[2] and the Court

15   proceeds by evaluating Defendants' proposed violation rate for each claim.

16           **a.    The Second Cause of Action for Meal Break Violations**

17           The Ninth Circuit has described in an unpublished opinion a violation rate of

18   two noncompliant meal breaks per week, which would equate to a violation rate of

19   less than 40%, as "at a minimum, reasonable."  *Branch v. PM Realty Grp., L.P.*, 647 F.

20   App'x 743, 746 and n.5 (9th Cir. 2016); *see also, e.g.*, *Sanchez v. Abbott Lab'ys*, No.

21   2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (finding a

22   60% violation rate reasonable but applying a 40% rate based on a policy and practice

23   that affected "some 'class members (but not all)' for missed meal periods."); *Oda v.*

24   _____

25   [2] The Court is troubled by what appears to be some reverse engineering of the violation rate.  While the
     assumed violation rate is reasonable when compared to other district courts, it is hard to understand

26   what fact pattern could give rise to a 37.8% violation rate.  That said, the Court is cognizant of the
     difficult position a Defendant faces in this situation of affirmatively showing sufficient damages.  And

27   given the broad language in the Complaint and the relatively conservative estimate suggested by
     Defendants, the Court is satisfied that Defendants have met their burden of establishing a plausible

28   violation rate by a preponderance of the evidence.

1  *Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7,

2  2015) (finding a 50% violation rate reasonable for a meal break claim based on a

3  policy and practice where the defendant "'sometimes' violated labor laws or failed to

4  'pay all' compensation due."); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-

5  0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (finding a 100%

6  violation rate reasonable based on a policy and practice where the defendant did "not

7  always provide[ ] lawful meal periods.").  Therefore, the Court finds the 37.8%

8  minimum violation rate suggested by Defendants appropriate to establish the amount

9  in controversy for the meal break claim in the second cause of action, which, using

10  Defendant's proposed class size, adds $1,450,282.20.

11         **b.**    **The Third Cause of Action for Rest Break Violations**

12        Next, for the rest break claims in the third cause of action, "[c]ourts in the Ninth

13  Circuit have found a 10% to 30% violation rate to be reasonable when the plaintiff

14  claims a 'pattern and practice' of rest period violations."  *Sanchez*, 2021 WL 2679057,

15  at *5 (collecting "policy and practice" or "pattern and practice" cases).  Indeed, this

16  Court has previously observed that "courts have found a violation rate of no more than

17  20% . . . is appropriate where there are both pattern and practice allegations and this

18  type of limiting language."  *Barrett v. Armadillo Holdings, LLC*, No. 1:22-CV-00882-

19  DJC-DB, 2024 WL 1133419, at *5 (E.D. Cal. Mar. 15, 2024) (collecting cases).

20  However, those cases tend to temper the allegations by limiting the violations to "from

21  time-to-time" or "at times" or "on occasion" or "often."  *See id.*  But here, instead of

22  saying "some of the time" or something like it, which would suggest a lower

23  reasonable assumption, Plaintiff alleges that the violations affected "Plaintiff and other

24  class members (but not all)" of them.  (*See* Mot. at 8 (citing Compl. ¶¶ 56–61, 68–70);

25  Reply at 3–6.)  That "not all" of the time language is closer to the "routinely,"

26  "regularly," and "often" language in *Johnson v. Bamia 2 LLC*, No. 2:22-CV-00548-KJM-

27  AC, 2022 WL 2901579, at *3 (E.D. Cal. July 22, 2022), where the court held a 40%

28  violation rate was not "facially unreasonable" and the plaintiff did "not propose a

1   better or more reasonable alternative," as here.  And one court held a 50% rest break

2   violation rate was reasonable based on policy and practice allegations that limited

3   these allegations by stating that "not all rest periods were given timely, if at all."  *Oda*,

4   2015 WL 93335, at *5.  Therefore, the Court adopts Defendants' assumption of a

5   37.8% violation rate to establish the amount in controversy for the third cause of

6   action.  Because the Court adopts Defendants' proposed class size and the 37.8%

7   violation rate, this claim also adds $1,450,282.20 to the amount in controversy.

8                    **c.      The Fifth Cause of Action for Late Payment of Wages**

9        For the fifth cause of action alleging a failure to timely pay wages upon

10  discharge, "[g]iven [Defendants'] reasonable assumptions regarding the previously

11  discussed violations, it is also 'reasonable to assume that all or nearly all employees in

12  the class would be entitled to recovery of waiting time penalties.'"  *Serrieh v. Jill*

13  *Acquisition LLC*, No. 2:23-cv-00292-DAD-AC, --- F. Supp. 3d ----, ----, 2023 WL

14  8796717, at *5 (E.D Cal. Dec. 20, 2023 (first quoting *Demaria*, 2023 WL 6390151, at

15  *7; and then collecting cases).  Therefore, the Court adopts Defendants' initial

16  violation rate of 100% to establish the amount in controversy for the fifth cause of

17  action.  Because the Court adopts Defendants' proposed class size and the 100%

18  violation rate, this claim adds $2,093,894.40 to the amount in controversy.

19                    **d.      The Sixth Cause of Action for Inaccurate Wage**
20                    **Statements**

21       For the sixth cause of action alleging a failure to provide accurate wage

22  statements, "when meal period and rest period violation rates are found reasonable,

23  courts have held a 100% wage statement inaccuracy assumption may also be

24  reasonable."  *Sanchez*, 2021 WL 2679057, at *6 (citations omitted).  Therefore, the

25  Court adopts Defendants' initial violation rate of 100% to establish the amount in

26  controversy for the sixth cause of action.  Because the Court adopts Defendants'

27  proposed class size and 100% violation rate for the sixth cause of action, this claim

28  adds $2,264,450.00 to the amount in controversy.

**e.    The Challenge to the Attorney's Fees Calculations Is Moot**

Finally, Defendants included a calculation for attorney's fees based on a 25% contingency fee. (*See* Defs.' Suppl. Br. at 2–3.) However, the amount in controversy based on the first four causes of action totals $7,258,908.80. As a result, the Court does not consider Defendants' attorney's fees calculations, and Plaintiff's challenges are DENIED AS MOOT. *Cf., e.g.*, *Alvarez v. Off. Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *4 (C.D. Cal. Nov. 30, 2017); *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962 n.2 (9th Cir. 2020); *Ibarra*, 775 F.3d at 1198 n.2.

**CONCLUSION**

For the reasons set forth above, the Court DENIES Defendants' Motion to Remand Pursuant to 28 U.S.C. § 1447. (ECF No. 19.) Defendants have fourteen (14) days from the docketing of this Order to file and serve its Answer or next responsive pleading.

IT IS SO ORDERED.

Dated:   **August 9, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC3 – Cunningham.23cv2564.Remand.Motion

10